IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAIMLER TRUCKS NORTH
AMERICA LLC,                                     No. 3:16-cv-01547-HZ

                    Plaintiff,

                                                 OPINION & ORDER

        v.

GOODYEAR TIRE & RUBBER
COMPANY,

                    Defendant.


Christopher T. Carson
Graham M. Sweitzer
Kilmer Voorhees & Laurick, PC
732 NW 19th Avenue
Portland, OR 97209

        Attorneys for Plaintiff


Daniel P. Larsen
Ater Wynne, LLP
1331 NW Lovejoy Street
Suite 900
Portland, OR 97209-3280

David H. Wallace
Michael J. Zbiegien, Jr.
Taft Stettinius & Hollister LLP
200 Public Square
Suite 3500
Cleveland, OH 44114

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Daimler Trucks North America ("DTNA") filed suit against Defendant Goodyear Tire & Rubber ("Goodyear") seeking to rescind a contract between the parties. Plaintiff asserts it entered into the contract under duress and seeks a declaration that the contractual provision is void. Plaintiff also brings a claim for promissory estoppel. As an alternative to the first claim for declaratory relief/rescission, Plaintiff seeks a declaratory judgment that the contract is governed by the Uniform Commercial Code's provisions on sales and remedies. Defendant moves to dismiss, or stay, because a nearly identical case is pending in the United States District Court for the Northern District of Ohio. On September 27, 2016, the Court entered a minute order granting Defendant's motion to dismiss, with an opinion to follow. This Opinion provides the Court's reasoning for granting Defendant's motion.

## BACKGROUND

      Plaintiff and Defendant are parties to a contract under which Plaintiff purchases tires from Defendant. Compl. ¶ 5, ECF 1. The contract has been in effect, in one form or another, since August 2008. Id. The original contract was extended in "Amendment 1," from January 1, 2011 through December 31, 2014. Id. at ¶ 7.

      In August 2014, the parties began discussions on amendments to their existing contract. Id. at ¶ 14. They negotiated the terms and details over the next four months. Id. at ¶¶

15-24.  In the Complaint, Plaintiff alleges that Defendant stalled on providing pricing information for sales after January 1, 2015.  Id. at ¶¶ 15–24.  In December 2014, terms proposed by Defendant included a fixed-volume purchase commitment from Plaintiff.  Id. at ¶ 21.  Plaintiff asserts that when Defendant finally provided the pricing information, it was much higher than the prices of Defendant's competitors.  Id. at ¶ 24.  Nonetheless, due to the delay and the fact that Plaintiff had existing commitments to customers, Plaintiff signed the amendment because it had "no reasonable alternative to signing" and failing to do so would cause "substantial loss to customer sales and goodwill."  Id. at ¶¶ 25, 29, 30, 31.  The amendment, known as "Amendment 2," became effective January 1, 2015 and continues until December 31, 2017.  Id. at ¶ 25.

Under Amendment 2, Plaintiff has a quarterly commitment to purchase or pay for a minimum of 42,500 tires.  Id. at ¶ 24.  For each quarter of 2015, Plaintiff met that obligation.  Def.'s Mot. to Dismiss Ex. A ("Ohio Compl.") ¶ 1, ECF 6-1.  However, Plaintiff failed to make the minimum purchase for the first quarter of 2016.  Compl. ¶ 27.  The parties argued over the controlling contractual requirements and Defendant's competitiveness in the marketplace.  Id. at ¶¶ 28–31.  The parties resolved the first-quarter dispute by agreeing that Plaintiff would make a late-quarter purchase of the required minimum.  Id. at ¶ 31.

Plaintiff did not make the minimum purchase of tires for the second quarter of 2016, causing Defendant to invoice Plaintiff for the unpurchased tires.  Id. at ¶¶ 32, 33.  From May through July 2016, both parties communicated via email concerning possible resolutions to reconcile the minimum requirement and amendments to resolve future disputes.  Id. at ¶ 34; See Beier Decl. Exs. 3–6, ECF 6-5 to 6-8 (emails dated May 17, 2016; June 16, 2016; July 21, 2016; July 29, 2016).  The parties' attempt to resolve this dispute was unsuccessful and negotiations

ceased.  Ohio Compl. ¶¶ 34, 35.  Plaintiff's due date for the payment for the second-quarter

shortfall was July 30, 2016.  Id. at ¶ 35.  Plaintiff filed this suit on July 29, 2016.  Defendant filed

an almost identical suit in Ohio on August 4, 2016.  See Ohio Compl.

## DISCUSSION

Although Plaintiff filed suit first, Defendant moves to dismiss based on the "anticipatory

suit" exception to the first-to-file rule.  Under the first-to-file rule, a district court has the

discretion to "transfer, stay, or dismiss" the more recently filed of two substantially similar

actions pending in different courts.  Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th

Cir. 1997).  The policy of the first-to-file rule "is to maximize judicial economy, consistency,

and comity."  Kohn Law Grp. v. Auto Parts Mfg. Miss., 787 F.3d 1237, 1240 (9th Cir. 2015).

The application of the rule turns on three factors: (1) the chronology of the actions; (2)

the similarity of the parties; and (3) the similarity of the issues.  Id. at 1240.  The "rule is not a

rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the

dictates of sound judicial administration."  Pacesetter Sys. v. Medtronic, 678 F.2d 93, 95 (9th

Cir. 1982).  Thus, the rule will not apply if a court determines that equitable interests counsel

otherwise; typical exceptions to the rule include bad faith, anticipatory suit, and forum

shopping.  See Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991)

In the present case, all three factors clearly have been met.  The parties do not dispute

that Plaintiff was the first to file or that the actions involve the same parties and issues.  Compare

Compl., with Ohio Compl. ¶ 52.  Nevertheless, Defendant argues that the Court should apply an

exception to the first-to-file rule because Plaintiff filed an anticipatory suit to secure its choice of

forum and did so because of a threat of imminent litigation.  In opposition, Plaintiff argues that

its filing is proper, that it has a legal remedy to pursue, and that the first-to-file rule should apply, as this suit is not anticipatory.

"The most basic aspect of the first-to-file rule is that it is discretionary." <u>Alltrade</u>, 946 F.2d at 628.  If the Court finds an anticipatory suit, it may, in its discretion, dismiss the first-filed action.  <u>Adidas Am. v. Herbalife Intern.</u>, No. CV 09-661-MO, 2010 WL 596584, at *2 (D. Or. Feb. 12, 2010).

A court may decline to apply the first-to-file rule based on "fairness considerations" or "equitable concerns." <u>Alltrade</u>, 946 F.2d at 628.  Another court in this District has described the equitable exceptions to the first-to-file rule as follows:

> The anticipatory suit exception is grounded in equitable principles and has a very specific meaning in this context.  The exception does not apply simply because a party anticipates litigation and sues first to obtain its choice of forum.  Rather, the exception applies when a would-be plaintiff is "deprived of its traditional choice of forum" because the other party lacked a "pre-existing motive for going to court" and filed suit based on "specific, concrete indications that a suit ... was imminent."  <u>See Inherent.com v. Martindale-Hubbell</u>, 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006).  The anticipatory suit exception is most often at issue when a plaintiff sues for declaratory relief. <u>See Id.</u>

<u>Adidas</u>, 2010 WL 596584, at *2.

Defendant argues that the threat of litigation drove Plaintiff to file this suit one day before Defendant's claim for breach of contract against Plaintiff was ripe.  Defendant further argues that Plaintiff's filing deprived Defendant of its choice of forum as true plaintiff.  Plaintiff suggests that Defendant's conduct during negotiations for Amendment 2 resulted in Plaintiff signing Amendment 2 under duress.  Plaintiff further suggests that because Plaintiff informed Defendant thirty-eight days before suing that Amendment 2 was unenforceable and did not sue until settlement negotiations were unsuccessful, there is no basis for concluding that its suit was anticipatory.

Amendment 2 was executed sometime in December 2014.  Compl. ¶ 25.  Plaintiff complied with the provisions of Amendment 2, including the quarterly purchase minimums, through all of 2015.  Ohio Compl. ¶ 19.  As indicated above, Plaintiff failed to make the minimum purchase for the first quarter of 2016.  Defendant sent a letter and invoice to Plaintiff on April 1, 2016 regarding the first-quarter shortfall.  Beier Decl. Ex. 1 at 2, ECF 6-3 (April 1, 2016 email noting sending of cover letter and invoice).  Plaintiff responded in an April 4, 2016 email by stating that Defendant had violated the parties' agreement because Defendant was no longer competitive in the marketplace.  Id. at 1.  Based on its interpretation of the agreement, Plaintiff stated it was not obligated to purchase tires or make a payment in lieu thereof.  Id.

Defendant responded on April 8, 2016.  Beier Decl. Ex. 2 (Apr. 23, 2016 email) at 3, ECF 6-4.  Defendant informed Plaintiff that the contractual provision Plaintiff relied on in support of its position that it had no obligation to purchase tires or make payment for them, was not part of the parties' current contract.  Id.  Thus, Defendant insisted that Plaintiff comply with the language in Agreement 2 setting forth the minimum purchase requirement.  Id.  Defendant closed its correspondence with the following language:

> We expect DTNA to comply with its contractual obligations and pay the amounts owed on time and in full.  Please confirm no later than April 20, 2016 that DTNA will make this payment per the terms of our Agreement.  Your failure to do so will leave us with no alternative but to take actions to enforce our rights under the Agreement.

Id. (emphasis added).

On April 23, 2016, Plaintiff responded to Defendant, criticizing Defendant for failing to address quality issues.  Id. at 2.  Plaintiff retreated from its previous argument that the issues with the tires relieved Plaintiff of the minimum purchase requirement.  Id.  But, Plaintiff continued to insist that those issues made the "minimum buy expectations unsupportable."  Id.  Plaintiff then asserted that it had entered into the contract under duress.  Id.  Nonetheless, Plaintiff desired to

work toward an "acceptable solution and if possible avoid litigation." <u>Id.</u> at 2.  And, Plaintiff

agreed to take the "shortfall amount of tires from Q1."  <u>Id.</u>

On May 17, 2016, Defendant sent Plaintiff a proposal for amending the parties' existing

agreement.  Beier Decl. Ex. 3.  Defendant also informed Plaintiff that it expected Plaintiff to

honor the terms of the current agreement, including the purchase and payment obligations, until

any agreed amendment was reached.  <u>Id.</u>

On June 16, 2016, Plaintiff wrote to Defendant about the "ongoing problems with the

state of the DTNA/Goodyear relationship."  Beier Decl. Ex. 4.  Plaintiff asserted that it had tried

to discuss reasonable modifications with Defendant.  <u>Id.</u>  Plaintiff objected to Defendant's

insistence that Plaintiff continue to purchase tires "under an agreement we at DTNA consider

unenforceable."  <u>Id.</u>  Plaintiff stated: "DTNA will not continue to purchase at the volumes

Goodyear imposed in the agreement."  <u>Id.</u>  Plaintiff told Defendant that if an agreement could not

be reached, Plaintiff would "have little choice but to rescind the current Amendment No. 2, to

Agreement[.]"  <u>Id.</u>  However, it still hoped for a reasonable resolution.  <u>Id.</u>

Consistent with the parties' agreement, Defendant sent Plaintiff an invoice for the second-

quarter shortfall, on July 1, 2016.  Beier Decl. ¶ 12.  The parties then met in Germany on July 14,

2016 to attempt to resolve the conflict.  <u>Id.</u> at ¶ 13.  Negotiations were unsuccessful.  Defendant

then sent a July 21, 2016 email to Plaintiff noting the impasse and asserting that the parties must

continue to abide by the current contract.  Beier Decl. Ex. 5.  Defendant wrote: "We remind you

that the due date for [DTNA's] payment in respect of the Q2 shortfall invoice is July 30.  Should

DTNA fail to comply, Goodyear will have no choice but to take legal measures to enforce the

contract."  <u>Id.</u>

/ / /

Plaintiff responded in a July 29, 2016 email stating that Plaintiff "does not owe the money stated in the attached invoice from Goodyear date July 1, 2016.  Accordingly, the invoice is rejected and DTNA will not be paying it."  Beier Decl. Ex. 6[1].

Contrary to Plaintiff's assertion, the facts show that Plaintiff's filing of suit here, the day before its payment was due to Defendant, was anticipatory and an effort to deprive Defendant of its choice of forum.  The evidence submitted in connection with the motion shows that Plaintiff performed the contract and Amendment 2 without any assertion of duress for its entire first year.  In 2016, it failed to purchase the minimum number of tires for the first quarter, but Plaintiff initially raised only competitiveness issues as the problem.  It made no mention of duress at that point.  After Defendant told Plaintiff that a lack of competitiveness in the market was not part of the parties' current agreement and did not excuse Plaintiff's obligations, Defendant then threatened suit in its April 8, 2016 correspondence.  Only then, and only in response, did Plaintiff mention duress.  Plaintiff's actions indicate that during the performance of the contract, it became dissatisfied with Defendant's product and wanted to alter the agreement.  See, e.g., Apr. 23, 2016 email ("the quality and irregular wear issues with Goodyear product [sic] are surprising. . . . Goodyear products are both not competitive commercially nor from a performance perspective[.]").  At that point negotiations failed, Defendant again threatened litigation, and a payment was due the next day.  Plaintiff then filed suit.

I recite these facts not to prejudge the merits of Plaintiff's duress claim, but to explain that the facts reveal no "preexisting motive" for Plaintiff going to court.  Plaintiff may have been

---

[1]   The Complaint in this case was filed at 1:07 p.m., Pacific Daylight Time, on July 29, 2016.  ECF 1.  Plaintiff's July 29, 2016 email to Defendant was sent at 3:01 p.m.  Beier Decl. Ex. 6.  Because it was sent from Hans-Christian Münchmeyer whose work location appears to be in Portland, I assume the Complaint had already been filed when the email was sent, based on the assumption that 3:01 p.m. reflects the sender's local time when the email was sent.  Despite the parties' history of recent negotiations, Münchmeyer did not tell Defendant's representatives that suit had just been filed or that Defendant's registered agent in Portland had been served at 2:29 p.m.  See ECF 5 (Proof of Service).

unhappy with Amendment 2 and frustrated with the quality of Defendant's product.  But, it was not until Defendant specifically threatened litigation for failure to make the required payment that Plaintiff raised the issue of duress and rescission.  And, it was not until Defendant again specifically threatened litigation for breach of the agreement and expressly noted the July 30, 2016 payment date that Plaintiff filed suit.  Thus, the record indicates that Plaintiff's suit was a direct response to Defendant's "specific, concrete indications that a suit was imminent." Accordingly, the anticipatory suit exception to the first to file rule applies.

**CONCLUSION**

The Court grant's Defendant's Motion to Dismiss [6].

IT IS SO ORDERED

Dated this _____ day of _____, 2016.

_____
MARCO A. HERNANDEZ
United States District Judge